All right, the next case we have is United States v. Boucher and, uh, Ms. Parris, you hear me? Yes, can you hear me, your honor? Yes, ma'am. And Mr. Young, can you hear me? I can, your honor. Thank you. All right, well, let's proceed with the argument. Ms. Parris, we'll hear from you first. Good morning. Erin McCampbell Parris on behalf of Gerald Boucher. May it please the court. This court should vacate the restitution and forfeiture orders entered below. No court can do what the district court did here. Because the district court exceeded her authority under the applicable statutes when fashioning her restitution and forfeiture orders, those orders are what this court has described in the past as an illegal sentence. As such, they must be vacated. With respect to restitution, the court based restitution solely on the defendant's ill-gotten gains. We don't know which particular restitution statute this report applied when fashioning that order, but no restitution statute allows restitution to be imposed on the basis of ill-gotten gains. This court has explained in the past the restitution and forfeiture are distinct sentencing issues with separate statutory bases. The restitution statutes, whichever one would be considered, require restitution based solely on the actual losses. Let's break it down if we could. It's easier to address it, the questions. Let's start with the restitution, which I think you have some stronger arguments for. Your argument is essentially that the restitution order, the amount, was computed in a fashion that was erroneous. Not erroneous, illegal, or without the court acting in excess. There was an assessment. They had expert testimony. There was an assessment of the amounts. The court didn't accept it all, but there was a disagreement as to the amounts. If there was error there, that's a certain level of illegality, but the question I have is, is that when you have a disagreement over the amount, is that something that survives a waiver of the whole issue? I think to me, you would have to go, you'd have to probably point to something much larger when you get beyond your waiver. I disagree there, Your Honor. I'm glad to hear from you. Okay, thank you. What we have here is the court said one thing and one thing alone with respect to restitution, which was that she was going to use the defendant's ill-gotten gains as the basis for imposing restitution. This court has said no court can do that. Now, what I want to say that I think is very interesting here is that we delineated the restitution or the loss that would be assigned to each of the various victims. Now, if we buy into her idea that this should be calculated based off of ill-gotten gains, and I don't accept that, but if we did, it has no correlation to what the government talked about with respect to ill-gotten gains with those transactions. I want to draw your attention to one particular item that jumped out at me, although none of them are in the record anywhere. If we look at what the government said in its forfeiture submission with respect to the Allen Avenue property, and this is that appendix page 406, it said that the defendants got $7,500 in total of ill-gotten gains or proceeds from that transaction. Then we look at the court's restitution order, and there are two banks there. Counsel, I don't know if there's a problem with the audio, but Judge Keenan has a question. Okay, my question, okay, thank you. My question is, could the district court have imposed, consistent with the government's expert testimony, $1,012,000 as the amount of restitution in this case? No, the court could not. I'm sorry, did I interrupt? Why not? There was evidence. You're disagreeing with the theory of loss, but why could the district court not have imposed that? And if the district court could have imposed that, are we looking at a harmless error situation? No, we're not. So, with respect to restitution, I think this is a very fascinating area of the law, wherein there's really no one size fits all methodology for calculating. You have to look at the unique facts and circumstances. So here, we have the bank's actual statements as to what they believe they could have achieved if they either foreclosed on the homes at issue, or worked it out with the homeowner and some other party to have a short sale. And we know that those were the only options available to the banks, because on each of these properties, the homeowners either defaulted or were behind on the banks thought they could get for the properties through either a short sale or through foreclosure. And in each situation, they got- What was wrong with the expert's testimony? What was wrong with the expert's testimony? A couple of things. So, first, with respect to the Dara Lane property, the expert looked at what the short sale was in 2014, at a time when we were just coming out of the financial meltdown, and said, I looked and I see that they refinanced this property in 2016, two years later, and that value minus the short sale is what I'm going to go with. But that's speculative. And we know what the bank itself thought it was going to get. Did you make that argument to the district court? Yes, we did, Your Honor. Did you cross-examine the expert? The expert was not put on at sentencing. It was just a statement. It was all done on paper. So, about a week before sentencing, the government submitted its paperwork on that. We submitted an opposition brief, and then we had the sentencing, which was fairly rushed, as you can tell from the record, on the forfeiture and restitution issues. And on the restitution issue, did you express your reasons for disagreeing with the government expert? At sentencing, yes. We talked about the fact that there was no loss in excess of $3,000 of unpaid interest with respect to district court. So, basically, you disagreed with the court's finding, which was supported, the million dollars was supported by the expert testimony. You disagreed with that. The court didn't impose that. It reduced it by a substantial amount. But it seems to me that the whole debate is an argument that is encompassed in, I'm trying to focus on the waiver. And you clearly intended to waive anything connected with the waiver agreement, unless it was very fundamental. And that's imposed by law. But the intent of the agreement was pretty expansive. Yes, Your Honor. So, if you look at the language in the waiver, the defendant agreed to be sentenced for restitution under the MVRA. And the MVRA says that we only look at victim's losses. And the text of the plea agreement itself says that he agrees to pay whatever the victim's losses happen to be. And then, as you point out, the restitution order has a bunch of numbers under loss. And I agree with you. It's sort of hard to reverse engineer where these numbers came from. But, you know, your claim is those numbers are incorrect. And that sounds like kind of a standard legal claim about how to calculate loss that would be comprehended by the waiver. It's not that the numbers are incorrect. It's that the methodology, the court had no authority under the statute to use ill-gotten gains. And so then if you look at- But as you point out, these numbers don't even exactly correlate to ill-gotten gains under the guidance. But how does that help you? These numbers don't make it look like the court did something other than just drop in restitution, than just conflate forfeiture and restitution. I don't know where these numbers came from, but they didn't come from that. Exactly. So, what I look at here is what the court said. And the court said she was going to use ill-gotten gains. No court can do that. That's why our argument survives the waiver. Because the court acted in excess of her statutory authority. And then when we look and see, okay, let's take a deeper dive here and see what may or may not have happened. Try to justify that in any way. You can't. There's no way you can justify what happened here. The line between the court erred in substituting and conflating forfeiture and restitution. The court made a mistake and the court acted without authority. That's like a really fine line. Most legal mistakes could be talked about as a court not having the authority to do something. You don't have the authority to make a mistake. And I am just having trouble. Can you explain to me why this is not an ordinary legal error? Why we would think about this not as... I mean, in Harvey, we say it's an abuse of discretion. If you calculate the amount of loss by assuming that the amount of gain is a reasonable approximation, that's an abuse of discretion. You made a mistake. But it doesn't say like you had no jurisdiction to do that. You acted without authority. It just talks about it like it's a normal legal error of the sort that would be encompassed by a plea waiver. So when I look at this court's precedent on the enforceability of waivers, a couple things jump out at me. One, Beck says it's something that no court can do in any case. We've got that here. No, we don't have that here. We don't have that here. It seems clear in this case that had the court said, for instance, I agree with the government's expert, the amount of loss is a million dollars. She could have entered a million dollars restitution agreement. This isn't a case where there's an argument. And I believe the defendant agreed to this in the plea agreement that restitution for these crimes was going to be owed to these identified victims. This isn't a case where if this judge had explained the numbers on that chart, that this would be fine. You wouldn't have an argument then that this exceeded her authority. Except that her reason, she stated on the record, for the number she achieved was the ill-gotten gains, which no judge can do. So that's the distinction from what you're saying here. And that's why this case is one where the challenge survives the waiver. Again, if you look at this court's opinion in Blick, in that particular case, the court said that we know what an illegal sentence is when the sentencing error is one the defendant could not have reasonably contemplated at the time of the plea agreement. And here, there's no way my client could have contemplated that he would be held accountable for ill-gotten gains. I'm sorry, can I ask you one question that makes, that does remind me of something, and I don't know if anyone will be able to explain this, but why does the plea agreement set $7,500 as the minimum restitution amount? Because $7,500, as I understand what's going on here, that's the undisputed conceded minimum for the defendant's gain. But the plea agreement itself uses the defendant's gain as the anchoring point for restitution, which as you me, like a defendant could read this plea agreement and think, for whatever reason, it looks like we're going with gain as the amount of loss. So what happened at the time of the plea agreement, we did not have numbers for restitution or for forfeiture, but we knew, our client knew, he had received the $7,500 payment. So we assumed that there would be some restitution number that likely could be more than that. But at the minimum, it would have been that because we knew he had taken that much out. So it's not a concession by any means that that number should, that restitution should be based on ill-gotten gains. It was simply the only number that was available at that time. Ms. Parris, what is legally erroneous about using the short sale amount as the starting point, as the forensic accounting did, and measure the short sale price, the difference between that and the refinance amount with regard to the two banks and the short sale amount from the flip sale price with regard to the third property? What is legally erroneous about that? Because it says you've got to show that that is legally erroneous in order to establish prejudicial error. Because you haven't, you have, excuse me, if if the court could have accepted a million and 12 under the government's theory of loss using the short sale as the base, and then determining the difference between that and the refinance amount or the flip sale amount, then you have at best harmless error unless you can show that the government's theory of loss is legally erroneous. It's legally erroneous, and may I answer this question? Because I am actually over time. Absolutely. Thank you. It's legally erroneous because the data the government used was not the actual losses. The restitution statutes require the government to demonstrate the actual losses. And so the short sale price was what the bank could achieve at that time with that property, with the homeowner in default. Two years later, when we were much further removed from the economic meltdown that caused both Wall Street and the real estate markets to plummet, the property was worth more. So that's why the government's numbers would have been operating outside of the statutory requirements that the losses be the actual losses. And we know here the actual losses because we have the statements from the banks themselves. Let me ask you this, just not to prolong this too far, but how do you distinguish a review of an error under the restitution, which would seem to be waived by the agreement, and an error that is so, that is illegal and was not waived? Well, I think that we are very much, we fall under the Broughton Jones opinion of this court, which is that anytime the court is imposing restitution, the courts, because it does not have inherent authority to impose restitution, must do so under a statute, and the statute issue, must apply properly. So we are akin to the Broughton Jones case where the court broke from the text of the statute and imposed restitution for a victim or a crime for which there was no conviction. That doesn't quite focus in on what I'm trying to get at. Let's assume you have error that the district court applied the statute incorrectly. The plea agreement wants to waive, it looks like, any issue relating to sentencing, including restitution. In other words, you have agreed to the plea agreement, and you agree the minimum amount of $7,500, but the court can determine the amount. And you've waived any issue with respect to that. Now the question is, it doesn't have an exception in there like you're talking about. So the question is, you're challenging what the district court did with respect to restitution as error. Why isn't that waived? I don't think this court has ever held that there are any particular words or formation. Oh, I'm asking you for your idea. Where do you draw the line between an error that is outside the waiver agreement and an error that is encompassed by the waiver agreement? Okay, so we make several challenges here. If you look at, for example, the fact that the court didn't identify a restitution statute and the record's unclear, I think we can see that that's probably covered by the plea agreement. But our lead argument, our big ticket item, is that the judge used ill-gotten gains. And that's something that no judge can do. The plain text of the statute doesn't allow the judge to do that. And this court has said it's not allowed. So that's why that particular error is one that would survive and allow us to argue that on challenge. What if the judge entered the million-dollar figure? Pardon me? If the judge entered the million-dollar figure, would you have a case? I think there our argument would be that it was not based on the actual losses. The restitution statutes require the government to prove and the courts to administer or fashion restitution based on actual losses. And that wasn't there. So we would make the argument. I don't know how we feel about it, but that would be. Yeah, Ms. Parrish, there was evidence of loss, though, from the forensic accountant. Now, you're saying that just because the property went up two years later in value, that that can't be measured as loss. But the short sale wouldn't have occurred, and the approval of the short sale wouldn't have occurred except for the scam, in this case, that took place. So why wasn't that a... I mean, you don't have any contrary evidence in this record that says that this methodology is unsound. So it seems to me you're asking us to speculate on what market conditions may have been and what they could have sold the property for if they weren't involved in a scam. What we know here, and what I think distinguishes this case from many others, is that in each situation, the homeowner had already defaulted or was near default. So the bank either could have foreclosed on the home, and the banks we know said that their amount of money they would have received in a foreclosure sale was less than what they would have received if they'd gotten a short sale, or they could have sold the property at short sale. This is not a situation where you and I put our properties on the market and they sell. This is a situation where a bank has to make a choice. So if our clients had never been forward on foreclosure, and if they had done that based on their own information, they wouldn't have gotten as much money as what they did here. So that's how they... Counsel, can I just... Your answer to Judge Niemeyer's question, sort of how do we know... What line are you offering us between a regular error and an error that can't be waived? And your answer was sort of like, well, no judge can do this because you're not allowed to do it. So no judge could have done this. But that describes all legal errors. Judges aren't allowed to commit any legal error. And so I'm not... And then it sounds like you would make the same argument had the district court judge entered the $1 million order, you would say, well, that's not based on actual loss either. And under the statute, it has to be based under actual loss. So you have exceeded your statutory authority. And I'm just not finding... I find this question very difficult. I want to be honest. But I haven't heard you yet give us an answer for why this error falls on... It's not just a regular error, the kind of error that no judge can commit. No judge can commit an error. Why, if this is not covered by the waiver, why any objection to the amount of restitution as not actually being the amount of loss would not also fall outside a plea waiver? Or maybe you think they all do fall outside a plea waiver. Well, look, I mean, I... Yes. In my opinion, I think we've made arguments here. There are several different arguments we've made. The big ticket item, the one that absolutely, in my opinion, without a doubt survives waiver is that the judge based her restitution order on the ill-gotten gains and that alone. And what this court has said in the past... Focus on... When trying to your argument, what is the standard for distinguishing between waived error and non-waived error? So, if it was simply that the judge, for example, hadn't identified a statute or that there was a miscalculation of some sort, we couldn't bring that challenge because we had waived that. But what we didn't anticipate, and this is where I think we crossed the line here, and it isn't a fine line, but we crossed the line when it's something that no defendant could have anticipated at the time of the plea. So, for example, I'll give you another example. Our client agreed to be sentenced under the 3553A factors. Well, at sentencing, the judge came in and applied Mississippi law. I mean, that's something he never could have anticipated. Just like here, he never could have anticipated that restitution would be calculated based on ill-gotten gains because we all know that the statutes don't permit it and that courts don't have inherent authority outside the context of those statutes. So, the court was acting without authority. Okay. I think we get the gist. All right. Why don't we hear- Thank you. ... from your colleague. Yeah. Mr. Young? Good morning, Your Honors. May it please the court. Let me jump right in at the colloquy between the court and my friend on the other side, which is what's the line? And let me offer you the government's view of what the line is, and then let me offer some examples that I think illustrate that. So, we think the line is the line from Thornsberry. The court has distinguished between claims of error that the court did something illegal, which it defined as beyond the authority of the district court to impose in all instances, and something that was done in violation of law. Those are the two categories. In our view, Your Honors, for something to be illegal, and therefore outside the scope of the appeal waiver, it has to be illegal in all patterns. And the classic example of this from this court's jurisprudence is Broughton-Jones, right? The court has said repeatedly that Broughton-Jones error is this kind of error. That was a case where what this court held was that in a perjury prosecution, where the offense was lying to a grand jury as a matter of law in all instances, that kind of offense did not create third-party victims. So, imposing restitution for that offense is unlawful in all instances. Let me apply that to the facts here. And I think it's very important to break apart two different species of error claim that my friend is making. The first kind of error that my friend describes is a Harvey error. That is that the district court impermissibly substituted gain for loss. Here's the line I would draw, Your Honors. If the district court said it was doing that in that way, I think it would be illegal and outside the scope of the appeal waiver. But in order for that to be true, I think the district court would have to have said something like, I disagree with both the government and the defendant. My view of this case is that the correct loss amount is zero. But for reasons of fairness, I don't like that. So, I'm going to substitute gain for loss. Under the restitution statutes, you can never do that in any case. And if that's what the district court had done, then I think I would be conceding that that was illegal and outside the scope of the appeal waiver. But Judge Keenan and Judge Niemeyer, I think your framing is exactly right. What the district court was confronted here with was two different theories of loss. One articulated by the defendant in his sentencing position paper, and one articulated by the government and the government's financial expert in their sentencing position paper. And on our view, the best reading of the record is that the district court didn't agree with the defendant's argument that the loss was zero. And for whatever reason, discounted very far down from the government's million dollar figure to a figure that matched the forfeiture figure. Once we're in that world, we're just disagreeing about how the district court did what the restitution statutes tell it to do. And once we're just having a disagreement about methodologically how you calculate loss, it's a regular kind of error that's going to fall within the scope of the waiver. And the best case I have for that proposition is Blick, which is a case that my friend on the other side mentioned a moment ago. Blick comes extremely close to saying this expressly in footnotes three and 12 of that appendix. Blick was a case that involved embezzlement from corporate accounts. And the defendant had this theory that he pressed both at the district court and before this court that because of corporate ownership rules, you could kind of this court said in Blick, notice this is not a clear error challenge to the district court's findings. It's just a theory of loss. And then at footnote 12, and this is where I think it's critical, the court says, we do not view the defendant's theory of loss argument as any way implicating our decision in Broughton Jones, period. I think the best way to read those two methodology, it's not a Broughton Jones species of error. It's not a claim of illegality. It's not a claim that the district court did something it was never authorized to do. Yes, Your Honor. Mr. Young, your opposing counsel, Ms. Paris, is saying that the district court was attempting to tie restitution to ill-gotten gains. But I think the actual language that the district court used was she said it would make no financial difference to distinguish between restitution and forfeiture. Assume for a minute we didn't have the appeal waiver. How would that be a justifiable explanation for restitution, that it would make no financial difference? Let me put all of my cards on the table, Judge Keenan. If there were not an appeal waiver in this case, I would have very tough sledding on direct appeal. Because on direct appeal cases without waivers, and I've sort of read all of them, the court is pretty specific about you need to explain how you got to loss. You need to explain why you made a preponderance finding of loss. And you need to do so in a way that's amenable to our review on appeal. So you have to explain what you were doing. And so the gap between the million figure and the figure that was imposed I think might be difficult for me to defend. I will say this. I am aided enormously by page 444 of the appendix. Because what happened in this sentence's hearing is the district court initially announced that it was going to go with the $7,500 figure. And the attorney for the government in the moment trying to secure recovery for the victims said, well, if you're going to go with gain, these two fraudsters gained much more. But then at page 444, the prosecutor made absolutely certain that there was no doubt on this record that the government was committing Harvey error. I mean, the prosecutor says, let's back up a second, Your Honor. Restitution is actual loss to the victims. Forfeiture is ill-gotten gains. They are two different things. Sometimes they overlap. Sometimes they don't. And we have offered you a theory of why the loss is what we think it is in this case. And on that kind of record, I just don't think my friend's argument that the district court was committing straight-up Harvey error has much traction. Wait, counsel, so, wait, counsel, for me to agree with you, are you saying do I have to think that what happened here is not that the district court used the restitution, I'm sorry, used the forfeiture numbers and just dropped them in as the restitution numbers? I have to think that what happened is that the district court started with a million and worked down and kind of by coincidence ended up with the same amount as for, is that what you're saying? I don't think so, Your Honor. And the reason I say so is I don't think species of sentencing explanation error survive an appeal waiver. So, let me put it this way, because I've sort of thought about cases that I think would be really difficult for me in preparation. Imagine the defendant came forward in a case and said, we think the loss is X dollars. And the government came forward and said, we think it's 10X dollars. And the district court without explanation said, I think it's 1,000X dollars. I think that would be a tough case to defend even with the waiver, because you might really wonder whether the district court had any hook to calculate loss on in that context. But because here we're sort of within the range offered by the parties, I just don't think that kind of thing is a concern. What if, in your example, the district court came in and said, I don't like either of those, I'm going to go with the same amount as forfeiture. I'm going to go with gains. Because that's what she said. I think she would have to, again, because there's not a species of sentence and explanation error, I think she would have to actually say that she was committing Harvey error. I think she would have to say, I think the loss is zero, but I'm going to use gains anyway. But let me ask you, that's not Harvey error doesn't assume that the loss is zero. Harvey error just, you don't have to say that to commit Harvey error. What the judge, I'm sorry, what the judge said, I'm just going to go with the amount of gain. The error in Harvey is simply calculating loss based on gain. How did the district court do anything other than that here? Let me, Judge Harris, I think that's right. Let me rephrase and then offer an example that I think might clarify my position. In order to be illegal, you have to be outside the scope of what the statute tells you to do. When I use the phrase pure unadulterated Harvey error, I think you're that's a little imprecise. What I mean to say is the district court says expressly, I think the loss was zero, but I'm going to impose restitution anyway. We think that's outside the scope of the waiver because it's flatly illegal. Because the restitution statute doesn't allow you to do that. Let me offer you an example of why I think an actual Harvey claim is going to be encompassed by the waiver. And this comes from personal experience, but I think it's helpful. I once litigated a case in front of a judge where my argument was, your honor, this is the kind of case where every dollar lost by the victim flowed into the pocket of the defendant. So you are not committing Harvey error by setting restitution and loss at the same figure. The district court judge agreed with me. That was a case with an appeal waiver. I don't think you could get out from underneath that appeal waiver on appeal by challenging that methodology. Well, this is the question I was going to ask you. It seems to me in in most economic situations, let's take a use a counterfeit $20 bill to buy a widget. The loss to the merchant is $20 because it was counterfeit and the money was no good. The gain to the defendant is $20 because he got the benefit of a $20 purchase. So the gain and the loss are the flip sides of a transaction where they're the same. Now, it doesn't always have to happen that way. And this case may be a good example where it but economically, I don't think we should call it taboo to be looking at gain to try to determine what loss was, because often, oftentimes in an economic transaction, the gain does measure the loss. I agree, Judge Nehemiah. The Second Circuit in a case called Zingare sort of has articulated a whole line of precedent about this exact issue. And I think that's exactly right. Let me turn, if I can, to the other species of claim. My friend also argues, because the restitution statutes only permit restitution orders for loss, if I come in on appeal and say the true loss amount was zero, I'm necessarily outside the scope of the appeal. We think that's wrong for a number of reasons. The easiest explanation, perhaps, is this court's opinion in Roger Day in 2012. That view sort of at a deep level relies on the idea that the maximum sentence for purposes of restitution is like a stepwise function, where if there's $500 of loss, the maximum sentence is $500. But if there's $1,000 of loss, the maximum sentence is $1,000. And if that were true, restitution would be subject to Apprendi rules. And this court said in Day it's not. The court said flatly, the maximum amount of restitution is always indeterminate. That's why Apprendi doesn't apply. So that species of argument just doesn't have any traction. And then we're left kind of where we were in the colloquy while my friend on the other side was giving her opening argument, which is all of these short sale scenarios and mortgage fraud type scenarios are always going to be extremely fact specific and are going to be amenable to different theories of calculating loss depending on how one views the transactions. And that was in Ritchie, which is a case that cited in the briefs about mortgage fraud. This court had a case called Stone in 2017 about short sale fraud like this case. And reading those opinions, the court gives district courts a fair amount of latitude under the abusive discretion standard to adopt a loss calculation methodology as it sees fit. And in our view, that's sort of the best reading of what happened here is that the district court, while perhaps not explaining itself to any great degree, was calculating loss off of the two different methodologies presented by the parties in circumstances where the government made absolutely certain to put on the record restitution and forfeiture serve different purposes. So at least theoretically, you have to disaggregate them. So that was said out loud at the sentencing hearing. Anything else? No, Your Honors. I will rest on my brief and encourage the court to waver and dismiss the appeal. All right, Ms. Parrish, you have some rebuttal. Yes, Your Honor. Thank you. I just want to hit on a couple of points that my friend mentioned. The first, he said that the way we know where to draw the line is that we look and see is this a situation where in all instances the court could not do what it did. And that's what happened here. There is no situation where a court can use ill-gotten gains, the stated basis and the only stated basis. Economically, I didn't want to get into this, but economically, the way the banks treat these transactions are sometimes just choices to be efficient for other purposes, to have their books read this way or that way. And it depends on how you calculate losses. When you turn over a property and forego the deficiency judgment in one manner or another, could be define a loss. And I think it's a very complex problem whether the gain and the loss are going to match. They're probably not going to match simply because the bank has totally different motives and needs with respect to its books. But you would have to define a bank to decide what a loss was. And one account could start with the notion that the full repayment of the loan is the beginning point. And then you could argue, well, it took less than the full face value of the note. Was that because of the fraud or was that because of the market? Or was that a combination of both? Now you have expert opinions coming in and trying to define those things. I think it's even more complex than that in this case, because of the banking regulations and how they book these things, these short sales. And so I'm simply suggesting to you just using the word gain to determine loss doesn't get you very far in my judgment, because I think gain can measure loss so long as you understand what you're doing. But normally you want to call it loss because you're looking from the bank's point of view. It's hard to put these other cases as a direct match. And what I come down to is here we had evidence from an expert who said the loss was a million dollars. You had a judge that said, I'm going to reduce that to a quarter of a million. Now, the question is, did have the judge any reason or basis to reduce it from a million to a quarter of a million? And the answer probably is no, but getting back to Judge Keenan's original question, why isn't that absolutely harmless if it could have put in a million? Anyway, that gets into some of the discussions. And I think you and I could go on for quite a while exchanging ideas on this and on the losses, but we would also have to understand the bank's books and what the bank was doing and how it was making these transactions. And that's a complex thing because the bank's expected short sales for its books because it would receive more money than in a foreclosure. And it would also then have to carry the loan as a bad loan. And all of those things have value. And so the question is now when the bank chooses to do this, being induced by fraud to do it, do you take all that loss or you take just what the market would not have accomplished or what the bank otherwise would have agreed to even in a non-fraudulent situation? Very tough. I agree that it's a complex set of facts here and that generally these real estate transactions are that way. The one thing we do know when we look at the record, the government said that under no circumstances would these banks have ever gotten the full value of those loans. That's speculative too. If the market popped up 100% the next day in the houses where they would have gotten all their money. I mean, this economic difficulties and realities by just positing one scenario. There are a dozen scenarios that could be posited. And in this type of case where the defendant was manipulating the economics and playing the market, it's very difficult to decide whether his gain is a bank's loss. The bank may not book it as a loss, but that's for other reasons why the bank doesn't want to book it as a loss for regulatory reasons. So, we have to go with the record we have and the record we don't know why the bank we have an expert who looked at this and concluded a million dollars was a loss. And we requested a hearing to challenge that expert and we were denied the opportunity to do so. Okay, that's error. But it seems to me that error is when you have evidence in the record, that error is probably an error that was weighed. Now the question is, okay, the judge creates another error by giving no explanation from going down from a million to a quarter of a million. But then the question comes is how's that hurt you? And was that waived anyway? Is that just part of the calculation? So, when looking at this record, there should be no confidence in what the court did below. There were both big and small errors. We brought as many of them as we recognized to the court's attention. But there are two big ticket items that can't be ignored. One, she used ill-gotten gains to calculate restitution. That survives the waiver. Two, she imposed forfeiture on my client. The ill-gotten gains may or may not be correct. We don't know. The ill-gotten gains may be a correct measure of loss. That's my whole point economically. We don't know that. We don't know that and this record doesn't demonstrate that. So, we have to go off this record, which again, there's other evidence, the bank's actual statements about what they expected to get, which would tend to undercut anything the expert had said. Now, setting that aside, I also want to touch on forfeiture and why I believe our forfeiture argument survives the waiver as well, which is that my client agreed to forfeit ill-gotten gains that he personally acquired and or benefited from. He was ordered to forfeit $220,000 that he never personally gained or benefited from and we know that because he conceded it. Wasn't he an owner of that bank account? Yes, he was. Okay, and the money went into the bank account and it's his money. The fact that his colleague ran off with it is something else, but that's a little bit like taking home the ill-gotten gains. He takes a quarter of a million dollars home and puts it on his chest in the dining room and during the night, a robber comes in and steals the money. It's not akin to that. Our facts are better than that. Let me just get finished with a question, then you can respond. But the point is he got the quarter of a million dollars, the $227,000, whatever it is. He got that money. He never used it. He had total access to it and as much control as the other man had. The other man ran off with it, but the fact is it was money and it was put in there. I don't know how you can deny that a joint bank account where they both had as much control as his partner to that account. Why that isn't his money? The Supreme Court actually gives us the answer to that question as to why that's not his money. When they give the example where they talk about the farmer who decided to sell marijuana, and this is in the Honeycutt case, and the farmer hires a college student to sell his marijuana to college students and they talk about the fact that the farmer gains and personally obtains the proceeds, whether the farmer sells the drugs directly to the college students or the farmer uses the college student he hired to sell the drugs to the college students. The college students pay that distributor. The distributor then returns the money back to the farmer. The distributor is not to be held accountable for those proceeds. The Supreme Court says that in Honeycutt. That's why we know our client did not personally obtain or benefit. Ms. Peres, we're talking about a bank account here, and this is what the First Circuit was talking about in that Cadden case, wasn't it? And saying Honeycutt does not apply in the situation of a joint bank account because you control the asset. In that particular case, I believe the co-conspirators were a husband and wife and the bank account issue was a family account and the defendant... Why would that account? The analysis was that if you actually acquire, I think that's what the court said, you actually acquire the money in the account if you are a joint account holder. What's wrong with that analysis? Because in that case, the court explained that the defendant conceded that he actually benefited from that account because it went to the benefit of the family of which he was a member. So he actually got the personal benefit from that joint bank account. My client did not benefit a penny. I mean, the government conceded that argument. They also conceded not only that, there were no intangible benefits to him and he was unable to make use of that balance to say, for example, use it as collateral for a loan for something else or get better credit, et cetera. He made no tangible or intangible benefits personally from those funds. So the cases that... Can I ask you a question about the forfeiture question? Because again, I think I'm quite possibly misunderstanding something. So your argument is about why the joint bank account was not obtained within the meaning of the statute, but why doesn't... Is the plea agreement itself... Couldn't the government rely just on the plea agreement to support this forfeiture, even if it wasn't covered by the statute? The defendant does agree to forfeit all interest in any fraud related asset that the defendant owns or over which the exercise is controlled directly or indirectly. So if I thought the bank account fell into that, would it matter anymore whether it was obtained within the meaning of the statute? Well, I think what you're probably latching onto is the indirect, obtaining it indirectly is my... Well, I guess, can you just answer my question? If it falls into this, does it matter anymore whether it falls within the statute? No. I mean, I think I read Honeycutt and this court's opinion in Chittenden to require the In order for the statute to authorize the forfeiture, I guess I'm asking you just a very fundamental question. I had assumed that even if this, let's assume hypothetically, the statute doesn't authorize the forfeiture, the defending could still agree to give it up in the plea agreement, right? Yes. I suppose you could agree to forfeiture that's outside the context of what would otherwise be permissible. Yes. But we didn't agree to that here. We agreed to be, to forfeiture under section 982 and that was... Well, you agreed to forfeit anything over which he exercises direct or indirect control. Yes. Is what you agreed to. Okay. If we look at the Honeycutt example that the court gave on the farmer and the college student dealer, the student, which is our, pardon me? I think we understand. Okay. Yeah. We'll end this case and I do want to thank you for your audience.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Pamela A. Harris